IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHEN CHARLES HULL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-69-D |
| | ) | |
| ARVEST BANK OPERATIONS, INC., | ) | |
| d/b/a ARVEST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

This matter comes before the Court on Defendant's Motion for Summary Judgment
[Doc. No. 53], filed pursuant to Fed. R. Civ. P. 56 and LCvR56.1. Defendant Arvest Bank
Operations, Inc. seeks a judgment in its favor on all claims asserted in the Amended
Complaint: 1) disability discrimination in violation of the Americans with Disabilities Act
(ADA), 42 U.S.C. § 12101 *et seq.*; 2) age discrimination and retaliation in violation of the
Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 101 *et seq.*; and 3) age and
disability discrimination and retaliation in violation of the Oklahoma Anti-Discrimination
Act, Okla. Stat. tit. 25, § 1101 *et seq.*[1]

Plaintiff Stephen Hull has responded in partial opposition to the Motion. *See* Pl's
Resp. Br. [Doc. No. 63]. Regarding his ADEA claims of age discrimination and retaliation,
Plaintiff affirmatively states that he "voluntarily abandons" these claims. *See id.* at 16.

---

[1] Defendant does not address Plaintiff's state law claims separately but asserts that these claims
fail because the federal claims fail. *See* Def.'s Mot. Summ. J. [Doc. No. 53] at 22 n.14 & 28 n.17.

Further, he provides no facts or evidence to support any ADEA claim. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's ADEA claims of age discrimination and retaliation.

Plaintiff does dispute that Defendant is entitled to summary judgment on his ADA claim. *See id.* at 16-30.[2] Defendant has filed a reply brief [Doc. No. 67], and both parties have made supplemental submissions based on evidence subsequently developed during discovery. *See* Pl.'s Suppl. Resp. Br. [Doc. No. 80]; Def.'s Suppl. Reply Br. [Doc. No. 84].

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific

---

[2] Like Defendant, Plaintiff does not separately address his state law claims. The Court accepts the parties' assumption that Plaintiff's state law claims survive or fail for the same reasons as his federal claims.

facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts

Plaintiff began employment with Defendant in Missouri in December 2009. In June 2011, he was promoted to loan manager and moved to Oklahoma City, Oklahoma. From 2011 through 2013, Plaintiff's performance evaluations reflected some criticism of his communication style and interpersonal skills, but he received positive remarks and ratings in all other areas. Throughout his employment by Defendant, Plaintiff's performance was rated as satisfactory or better by his supervisors, and he received no discipline.

In March 2014, Ron Witherspoon became president of Defendant's Oklahoma City branch and Plaintiff's supervisor.[3] In February 2015, Mr. Witherspoon completed Plaintiff's annual performance appraisal. Plaintiff's overall rating and his ratings in most performance areas, including supervisory skills, were described as "meets requirements,"

---

[3] Until January 2014, Plaintiff was supervised in Oklahoma City by Kelly Brander, and for approximately two months before Mr. Witherspoon arrived, Brad Krieger was Plaintiff's supervisor.

and he received ratings of "exceptional" and "commendable" in customer relations and service. *See* Def.'s Ex. 12 [Doc. No. 53-12] at 4-6. Mr. Witherspoon was critical, however, of the results of Plaintiff's manager evaluation survey by associates under his supervision, and instructed Plaintiff to work on improving these response ratings. Plaintiff attributes some of the negative survey feedback to the pressure of increased financial goals for his department.

In April or May 2015, a cyst removed from Plaintiff's head was determined to be malignant. In June 2015, Plaintiff was diagnosed with metastatic, stage IV melanoma that had spread to his lungs. Plaintiff also was diagnosed with thyroid cancer, and his thyroid was surgically removed in September 2015. In October 2015, Plaintiff began treatment of the melanoma with a cancer medication, Keytruda® (pembrolizumab), administered by infusion every three weeks. His physicians recommended radioactive iodine therapy for the thyroid cancer, but this treatment has been postponed during the melanoma treatment.

It is unclear exactly when Defendant learned of Plaintiff's diagnoses and treatment. Plaintiff has testified that he first informed Defendant's human resources manager, Janice Fox, of his melanoma cancer diagnosis in July 2015; Ms. Fox recalls learning of it in August or September. Mr. Witherspoon has testified that his assistant told him in "mid 2015," that is "late spring, early summer, like April, May, June time frame," that Plaintiff had cancer, although she did not know anything specific, and that he reported it to Ms. Fox. *See* Witherspoon Dep. 11:25-13:3; 13:21-14:6. Plaintiff did not request an accommodation of his medical condition from Defendant.

In November 2015, Mr. Witherspoon decided to terminate Plaintiff's employment. According to Mr. Witherspoon, he reached this decision because he "had lost confidence in [Plaintiff's] ability to lead" his department due to a combination of factors, including a former employee's complaint about Plaintiff and an unsatisfactory manager evaluation survey. *See* Witherspoon Dep. 18:4-11; 38:4-8; 49:17-51:5. Specifically, on October 22, 2015, Rebecca Schoelen resigned; she later cited Plaintiff's management style as a factor in her resignation and accused him of discriminating against female employees. While investigating Ms. Schoelen's complaint, Defendant received another complaint about Plaintiff's communication and leadership styles, and Defendant conducted a new manager evaluation survey regarding Plaintiff. On November 12, 2015, Mr. Witherspoon received the results of the survey, and the scores and comments showed a higher rate of negative feedback compared to the February 2015 survey, although the majority of responses remained positive. Plaintiff was terminated effective November 15, 2017.

## Discussion

### A.    Prima Facie Case of Disability Discrimination

Plaintiff relies for proof of his ADA disability discrimination claim on the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of disability discrimination, Plaintiff "must show that, at the time he was fired, (1) he was a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability." *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011); *accord Hawkins v. Schwan's Home*

*Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015). Defendant concedes Plaintiff was disabled

as defined by 42 U.S.C. § 12102(2).[4] Also, the Court has granted summary judgment in

Plaintiff's favor on this element of his ADA claim. *See* 6/26/17 Order [Doc. No. 86] at 4.

Only the other two elements are disputed. Plaintiff bears the burden "at the summary-

judgment phase to 'rais[e] a genuine issue of material fact on each element of his prima

facie case.'" *Hawkins*, 778 F.3d at 883 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d

1179, 1189 (10th Cir. 2003)).

### 1.      Qualified for the Position of Loan Manager

"The term 'qualified,' with respect to an individual with a disability, means that the

individual satisfies the requisite skill, experience, education and other job related

requirements of the employment position such individual holds or desires and, with or

without reasonable accommodation, can perform the essential functions of such position."

29 C.F.R. § 1630.2(m). Plaintiff contends he can satisfy this element of his claim because

he was successfully performing the job-related requirements of his position of loan

manager, and any deficiencies in his interpersonal or communication skills, as alleged by

Defendant, did not affect his ability to perform the essential functions of the job.[5]

---

[4] Defendant states it "does not dispute Plaintiff had a disability (cancer) under the ADAAA at the time of his separation from employment." See Def.'s Mot. Summ. J. [Doc. No. 53] at 23 n.15.

[5] The question of whether a plaintiff is a "qualified individual" for an ADA claim involves "a two-part analysis." *See Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quoting Hawkins, 778 F.3d at 887). "First, we ask whether the plaintiff can perform the essential functions of the job, *i.e.*, functions that bear more than a marginal relationship to the job at issue." *Id.* (internal quotation omitted). "[S]econd, if we conclude that Plaintiff is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions." *Id.* (internal quotation omitted). In this case, Plaintiff contends he satisfies the first step and does not address the second.

The ADA does not define "essential functions" but mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of essential functions of the job." *See* 42 U.S.C. § 12111(8). Tenth Circuit case law incorporates implementing regulations that define the concept to mean "the fundamental job duties of the employment position" and identify appropriate considerations. *See Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quoting 29 C.F.R. § 1630.2(n)(1)).

> (3) Evidence of whether a particular function is essential includes, but is not limited to:
>
> > (i) The employer's judgment as to which functions are essential;
> > (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> > (iii) The amount of time spent on the job performing the function;
> > (iv) The consequences of not requiring the incumbent to perform the function;
> > (v) The terms of a collective bargaining agreement;
> > (vi) The work experience of past incumbents in the job; and/or
> > (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (internal quotations omitted); *accord Picture People*, 684 F.3d at 986. "Determining whether a particular function is essential is a factual inquiry." *Davidson*, 337 F.3d at 1191.

Upon consideration of the facts and evidence presented, the Court finds that Plaintiff has demonstrated a genuine dispute of material fact regarding his ability to perform the "essential functions" of his position of loan manager. First, Defendant's job description for the position does not include employee supervision or interpersonal skills as part of the "Essential Duties and Responsibilities" of the job. *See* Def.'s Ex. 5 [Doc. No. 53-5] at 1. Defendant challenges Plaintiff's fitness by pointing to items listed in the job description that are categorized as "Team Accountabilities" or "Other Skills and Abilities." *See* Def.'s Mot. Summ. J. [Doc. No. 53] at 9, ¶ 5 & 24-25; Def.'s Ex. 5 at 2. Second, Plaintiff never received an unsatisfactory job evaluation in the position of loan manager, and Defendant's corporate representative has testified that Plaintiff "was not terminated for unsatisfactory performance." *See* Andress Dep. 45:14-15. A reasonable inference from this testimony is that Plaintiff was satisfactorily performing the essential functions of his position but Mr. Witherspoon simply "lost faith" in Plaintiff's leadership ability. *Id*. 45:15-17.

On the record presented, the Court finds that Plaintiff has sufficiently shown that he was qualified, without an accommodation, for the position of loan manager.

### 2. Discrimination Based on Disability

Defendant also challenges Plaintiff's ability to establish the third element of a prima facie case that he was terminated because of his disability, commonly referred to as a "causation" element. *See Carter*, 662 F.3d at 1147. Defendant contends Plaintiff cannot establish a causal connection between Mr. Witherspoon's knowledge of Plaintiff's medical condition and the termination decision made several months later, and Plaintiff lacks any evidence to suggest discriminatory animus against disabled persons.

Plaintiff relies for proof of causation on generally-recognized methods of creating an inference of discrimination. Plaintiff points out that he was replaced in the position by an individual who was not disabled, that non-disabled persons who were similarly situated were not terminated, and that he was fired within approximately six weeks after starting chemotherapy treatment of his melanoma. Defendant either disputes these facts or contends they are insufficient to show disability discrimination. However, viewing the record in the light most favorable to Plaintiff, as required by Rule 56, the Court finds that Plaintiff has presented sufficient facts to meet his burden at the prima-facie stage – a burden that is "not onerous" – to show he was terminated "under circumstances which give rise to an inference that the termination was based on [his] disability." *See Butler v. City of Prairie Village*, 172 F.3d 736, 748-49 (10th Cir. 1999) (internal quotation omitted).

For these reasons, the Court finds that Plaintiff has demonstrated the existence of a genuine dispute of material facts that preclude summary judgment on the ground that he cannot establish a prima facie case of disability discrimination.

## B.    Proof of Pretext

Defendant also asserts, and persuasively argues, that Plaintiff cannot show its stated reasons for terminating his employment are pretextual. "A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1038-39 (10th Cir. 2011) (internal quotations and alterations omitted); *see Foster v. Mountain Coal Co*, 830 F.3d 1178, 1194 (10th Cir. 2016). "A plaintiff demonstrates pretext by showing either

that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (internal quotation omitted).

Defendant has not been consistent in its defense of Plaintiff's claim. Its original position in the litigation was that Plaintiff voluntarily resigned his position. *See* Answer [Doc. No. 10] at 3, ¶ 7 & 6, ¶ 40. Further, Mr. Witherspoon in his deposition testimony attributed the termination decision, in part, to the results of a "BAI survey." *See* Witherspoon Dep. 38:4-9; 49:17-23. Although this survey is not fully explained, it served to evaluate the Oklahoma City branch as a whole, including Mr. Witherspoon, and predated the complaints about Plaintiff. *Id.* 51:6-25. Defendant has abandoned this reason in its summary judgment briefs. Regarding one factor on which Defendant has settled to justify the termination decision – the complaint by Ms. Schoelen – Defendant overstates the results of the investigation; Ms. Schoelen's complaint of gender discrimination was not substantiated and was not a factor in the decision. *See* Andress 40:14-23.[6] Further, Defendant ignores that Ms. Schoelen also complained about the person who was her direct supervisor when she resigned, Paul Krus, but he was not investigated or even interviewed. *See* Andress Dep. 60:18-24; Krus Dep. 19:24-20:19.

Upon consideration of the facts and evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has shown sufficient inconsistencies and weaknesses in Defendant's explanation of the decision to terminate his employment, when combined with

---

[6] Defendant apparently uses the phrase "hostile work environment" colloquially in its briefs, referring to a harsh or intimidating management style. *See*, *e.g.*, Def.'s Reply Br. [Doc. No. 67] at 7.

the subjective nature and the timing of Mr. Witherspoon's "loss of confidence" in Plaintiff, that a jury could reasonably conclude Defendant's asserted reason for the termination decision is pretextual and Plaintiff's disability was a determining factor. Thus, the Court finds that Plaintiff has sufficiently demonstrated the existence of a genuine dispute of material facts and that summary judgment is inappropriate on Plaintiff's disability discrimination claims.

## Conclusion

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims of age discrimination and retaliation asserted under the ADEA and state law but that genuine disputes of material facts preclude summary judgment on Plaintiff's disability discrimination claims under the ADA and state law.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 53] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 11th day of August, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE